1
2
3
4
5
6                       **UNITED STATES DISTRICT COURT**
7                              **DISTRICT OF NEVADA**
8
UNITED STATES OF AMERICA,           )
9                                    )
                         Plaintiff, )
10                                   )        2:08-cr-00283-RCJ-RJJ
                vs.                  )
11                                   )
STEVEN BOOTH et al.,                 )        **ORDER**
12                                   )
                        Defendants.  )
13 _____   )

14        On October 28, 2008, a federal grand jury returned an Indictment charging Defendants

15 with having engaged in a RICO enterprise, the "Playboy Bloods" street gang.  Defendants

16 Stephen Booth, Jacorey Taylor, Reginald Dunlap, and Marquette Tillman (collectively,

17 "Defendants") have also been charged with committing a violent crime, murder, in aid of

18 racketeering activity in violation of 18 U.S.C. § 1959(a)(1) and (a)(2).  Six of the ten indicted

19 Defendants have pled guilty to various charges.  The four remaining Defendants await trial.  The

20 Attorney General has declined to pursue the death penalty.  Thirteen motions and various

21 joinders thereto are pending before the Court: two motions to quash, a motion for a preservation

22 order, two motions to compel, two motions in limine, two motions to dismiss, a motion to extend

23 time, a motion to strike, a motion to file a consolidated reply brief, and a motion to continue trial.

24 ///

25 ///

1    **I.    MOTIONS TO QUASH**

2         **A.    DPS's Motion to Quash Booth's Subpoena (ECF No. 203)**

3         Non-party Nevada Department of Public Safety ("DPS") has moved to quash a subpoena

4    duces tecum Booth served upon it.  DPS argues that the information demanded in the subpoena

5    is privileged and confidential, and that the subpoena is overbroad, unreasonable, and

6    burdensome under Criminal Rule 17(c).  The subpoena directs the DPS to bring to trial forty

7    categories of documents pertaining to Booth, Steven Booth, Sr., and Sharon A. Booth. (*See* DPS

8    Subpoena & attach. A, Aug. 24, 2009, ECF No. 203-1).  The subpoena is extensive and

9    essentially requests any and all documents in the possession of DPS concerning or mentioning

10   any of these three persons. (*See id.*).

11        The Court has discretion in deciding whether to quash the subpoena under Rule 17(c).

12   *See United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981).  DPS first argues that the Court

13   should quash the subpoena as unreasonable or oppressive. *See* Fed. R. Crim. P. 17(c)(2) ("On

14   motion made promptly, the court may quash or modify the subpoena if compliance would be

15   unreasonable or oppressive.").  A subpoena duces tecum in a criminal case is not properly used

16   as a discovery tool, but only to ensure that documents are brought to trial early enough that the

17   opposing party may review them before they are offered into evidence. *United States v. Nixon*,

18   418 U.S. 683, 698–99 & n.11 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214,

19   220 (1951)).  A subpoena duces tecum may also be used to require production before trial under

20   certain circumstances, *see id.*, but the present subpoena only demands production at trial itself,

21   with prior production provided as an alternative to appearing to testify, (*see* DPS Subpoena).

22   DPS could comply with this subpoena as written by sending the documents with its witness on

23   the date the witness is called to testify.  In order to support the subpoena:

24            the moving party must show: (1) that the documents are evidentiary and relevent
             [sic]; (2) that they are not otherwise procurable reasonably in advance of trial by
25            exercise of due diligence; (3) that the party cannot properly prepare for trial without
             such production and inspection in advance of trial and that the failure to obtain such

inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.* at 699–700 (footnote omitted).  On its face, the present subpoena constitutes a "fishing expedition."  The best clue as to the intent to "fish" is the repeated use of the words "any," "all," and "any and all" in many of the forty separate requests for broad categories of information.  The Court will grant the motion to quash.  In his response to the motion to quash, Booth notes that the purpose of the subpoena was to obtain mitigating information for him to provide to the Attorney General to assist him in deciding whether to seek the death penalty.  Since the subpoena was issued, the Attorney General has determined not to seek the death penalty.

> **B.      LVMPD's Motion to Quash Taylor's Subpoenas (ECF No. 206)**

Non-party Las Vegas Metropolitan Police Department ("LVMPD") has moved to quash two subpoenas duces tecum Taylor served upon it.  LVMPD makes the same arguments that DPS makes against Booth's subpoena, minus the confidentiality and privilege issues.

The first subpoena directs the production by the I.S.D. Division of LVMPD of two specific taped witness statements, one specific written witness statement, the cell phone records for the cell phone found at the scene of the Thomas homicide, and any written or taped witness statements given to two specific detectives regarding the crime, to be delivered by 5 p.m. on September 21, 2009. (*See* First LVMPD Subpoena, Sept. 3, 2009, ECF No. 206, at 8).  The second subpoena, issued on the same date, directs the production by the Forensics Division of LVMPD of ballistic reports and notes relating to specific firearms, bullets, bullet fragments, bullet casings, and DNA results concerning blood found at a specific apartment, also to be delivered by 5 p.m. on September 21, 2009. (*See* Second LVMPD Subpoena, Sept. 3, 2009, ECF No. 206, at 10).

Most of these requests do not appear oppressive or unreasonable.  Such reports almost certainly contain relevant evidence.  It is likely that these statements and documents are in the sole possession of LVMPD and the United States.  The evidence described is also likely critical

to the defense, and the defense cannot be expected to prepare for trial without it.  Nor do most of the requests appear to constitute a fishing expedition, because specific reports and statements are requested.  However, LVMPD notes that with respect to the request for all statements made in connection with a particular event number and the request for DNA testing results, Taylor uses the words "any" and "all."  LVMPD is correct that the broad request for witness statements should be quashed, but the request for "any" DNA tests specifically relates to blood found in a specific apartment.  The Court will grant the motion to quash as to the requests for "[a]ny and all witness taped/written statements obtained by LVMPD Detective[s]," but will otherwise deny the motion.

## II.    MOTIONS TO COMPEL

### A.    Tillman's Motion for a Preservation Order (ECF No. 430)

Tillman asks the Court to order LVMPD, the Clark County District Attorney's Office, the Nevada Department of Corrections, the Clark County Correction Center, the Nevada Department of Public Safety – Division of Parole and Probation, and the FBI to preserve roughly a dozen broad categories of evidence according to broad definitions.  Tillman cites to the All Writs Act and case law concerning a court's inherent power to manage a case, but not discovery- or other rules.  The Court denies the motion.  The Court need not add to the existing requirements on the United States under the discovery rules, *Brady*, *Giglio*, and the Jencks Act.  These cases and rules, as well as the adverse inference rule, are sufficient to ensure a fair trial.

### B.    Dunlap's Motion to Compel Production of Rule 404(b) Evidence (ECF No. 531)

Dunlap asks the Court to order the United States to disclose evidence of any other crimes, wrongs, or acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a defendant. Fed. R. Evid. 404(b).  However, such evidence may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*  If the United States wishes to introduce such evidence for these purposes,

however, it must give the defendant reasonable notice in advance of trial of the "general nature"

of such evidence it intends to introduce. *Id.*  The United States may give notice during trial only

if it shows good cause. *Id.*  The Court grants the motion and will require the United States to

produce such evidence thirty days before trial.

> **C.      Dunlap's Motion to Compel the Production of Federal Law Enforcement Witnesses' Personnel Files (ECF No. 532)**

Dunlap asks the Court to compel the United States to produce the personnel files of

federal law enforcement and "task force" officers who will be called as witnesses at trial.  The

Court grants the motion in part and denies it in part.  When a criminal defendant makes such a

request, the United States need not hand over the file in its entirety but must review the file and

disclose to the defense materials therein relevant to the impeachment of testifying officers

("*Henthorne* material"), because evidence reflecting negatively on a Government witness's

credibility constitutes a species of *Brady* material; if the United States is unsure as to the

impeachment value of certain information, it must submit it for *in camera* review. *See United

States v. Henthorne*, 931 F.2d 29, 30–31 (9th Cir. 1991).  Although the Government may later be

found to have violated *Brady* where it fails to disclose *Henthorne* material of which a law

enforcement official making the review, but not the AUSA him- or herself, was aware, a district

court may not prospectively require an AUSA *personally* to conduct the *Henthorne* review.

*United States v. Herring*, 83 F.3d 1120, 1121–22 (9th Cir. 1996).  The Court will order a

*Henthorne* review under these parameters.

## III.   MOTIONS IN LIMINE

A motion in limine is a procedural device to obtain an early and preliminary ruling on the

admissibility of evidence.  Black's Law Dictionary defines it as "[a] pretrial request that certain

inadmissible evidence not be referred to or offered at trial.  Typically, a party makes this motion

when it believes that mere mention of the evidence during trial would be highly prejudicial and

could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed.

2009).  Although the Federal Rules of Evidence do not explicitly authorize a motion in limine,

the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant

to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed.

R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence

from being suggested to the jury by any means")).

A motion in limine is a request for the court's guidance concerning an evidentiary

question.  *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999).  Judges have broad

discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d

663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve factual

disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323

(D.D.C. 2008).  To exclude evidence on a motion in limine "the evidence must be inadmissible

on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D.

Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred

until trial so that questions of foundation, relevancy and potential prejudice may be resolved in

proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill.

1993).  This is because although rulings on motions in limine may save "time, costs, effort and

preparation, a court is almost always better situated during the actual trial to assess the value and

utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional.  Such "rulings are not binding on the trial judge [who]

may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753,

758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to

change, especially if the evidence unfolds in an unanticipated manner).  "Denial of a motion in

limine does not necessarily mean that all evidence contemplated by the motion will be admitted

to trial.  Denial merely means that without the context of trial, the court is unable to determine

whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

**A.      Booth's First Motion in Limine (ECF No. 504)**

**1.      Booth's 2006 Convictions**

In Booth's first motion in limine, he first asks the Court to exclude any evidence of his 2006 state convictions for attempted murder and robbery for any purpose, including impeachment.  Booth argues that these convictions were based on a January 29, 2005 incident that had no connection to the Playboy Bloods and is not relevant to any of the current charges. Assuming this is true, the Court will exclude the evidence for the purpose of proving any of the present charges, unless the United States introduces it at trial to show that it is relevant to one of the present crimes with respect to proof of motive, opportunity, intent, preparation, planning, knowledge, identity, or absence of mistake.  Because the 2006 conviction did not involve dishonesty or false statements, it is only admissible for impeachment if the maximum punishment that could have been imposed under the statutes was death or more than a year of imprisonment and if "the probative value of admitting this evidence outweighs its prejudicial effect." *See* Fed. R. Evid. 609(a).  Booth argues that the probative value of the conviction does not outweigh its prejudicial effect.  A district court considers the five "*Cook* factors" when determining whether such impeachment evidence should be excluded: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *See United States v. Jimenez*, 214 U.S. 1095, 1098 (9th Cir. 2000) (citing *United States v. Cook*, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (en banc)).

The Court will not exclude the evidence at this time.  The impeachment value of attempted murder and robbery are moderate.  These are not crimes of direct dishonesty, but they are crimes indicating a willingness to flout societal norms for personal gain, especially if the attempted murder was a part of the robbery itself, and such a willingness is extremely probative

1  of a person's propensity to lie to avoid a conviction.  The past crimes here occurred in January of

2  2005, approximately seven years before the upcoming trial.  The United States alleges further

3  serious criminal activity in the interim.  The crime is not remote enough to reduce its probity as

4  to credibility.  One of the charged crimes (violent crime in furtherance of a RICO conspiracy

5  (murder)) is similar to the past attempted murder charge.  It is not yet known how important

6  Booth's testimony will be or even if he will testify.  Finally, as to the centrality of the credibility

7  issue, it is not yet known what the probative value of the impeachment evidence will be.  It could

8  be the case that Booth takes the stand and testifies on direct examination that he is an upstanding

9  citizen or even that he has never been connected to any violent or criminal activity.  If so,

10  evidence of a past conviction for attempted murder and robbery will be extremely probative of

11  his credibility.  In conclusion, the Court will preliminarily exclude evidence of Booth's 2006

12  convictions for the purpose of proving the current charges against him, but not for the purpose of

13  impeachment.

14          **2.**     **Booth's Prior Bad Acts and Associations**

15       Second, Booth asks the Court to exclude any evidence of his prior bad acts and

16  association with other persons who are allegedly involved in criminal activity.  The Court will

17  exclude evidence of Booth's 2003 arrest for possession of a deadly weapon, his prior citations

18  for trespass, as well as evidence of other run-ins with the law that constitute inadmissible

19  character evidence, unless the United States can show that a particular incident is relevant to

20  proving motive, opportunity, intent, preparation, planning, knowledge, identity, or absence of

21  mistake.

22       However, the Court will not categorically exclude evidence that Booth is a member of the

23  Playboy Bloods.  Although such evidence is not alone sufficient to prove his involvement in a

24  conspiracy or other crime with the Playboy Bloods, *see United States v. Garcia*, 151 F.3d 1243,

25  1246 (9th Cir. 1998), it is relevant to proving his involvement in such a conspiracy and should

1   not be excluded.  The Ninth Circuit has held that admission of evidence of gang membership can

2   be reversible error because of the risk of a jury perceiving a Defendant to be guilty by

3   association, at least where the fact of gang membership was not directly relevant to the crime(s)

4   charged. *See, e.g.*, *Kennedy v. Lockyer*, 379 F.3d 1041, 1055–56 (9th Cir. 2004).  Here, however,

5   one of the crimes charged is a RICO conspiracy.  The Playboy Bloods is alleged to have

6   constituted that conspiracy.  So although Booth may be entitled to some kind of limiting

7   instruction as to the other charges, the fact of his membership in the Playboy Bloods is not only

8   relevant but critical to proving his involvement in the RICO conspiracy.  For the purposes of the

9   RICO conspiracy charge, evidence of Booth's membership in the Playboy Bloods does not

10  simply serve the impermissible function of showing that he is a gang member and therefore a

11  "bad guy."  It shows that he was a member of a criminal enterprise in a way that constitutes a

12  crime in-and-of-itself.  Of course, evidence of Booth's mere membership in the Playboy Bloods

13  will not necessarily be sufficient to convict him of the RICO conspiracy.  Just as it is possible

14  that a chauffeur for a crime boss may belong to a gang that constitutes a criminal enterprise

15  without himself having the requisite involvement or mens rea to be held accountable for

16  engaging in a RICO conspiracy, Booth may have served some minor, ancillary purpose in the

17  Playboy Bloods.  But the evidence of his membership is relevant to proving the RICO

18  conspiracy charge and will not be excluded.

19         **3.      Prior Bad Acts by Other Persons**

20         Third, Booth asks the Court to exclude any evidence of prior bad acts by other

21  Defendants or non-parties.  The Court will not exclude such evidence unless it is inadmissable

22  against all Defendants tried with Booth, but Booth will be entitled to a limiting instruction.

23         **4.      Gory Photographs**

24         Fourth, Booth asks the Court to exclude gory photographs from the Billy Thomas

25  homicide.  The Court cannot decide whether to exclude such photographs until it views them at

1    trial in the context presented.  At that time, with the supporting testimony, the parties'

2    arguments, and the photographs present, the Court will be able to determine if the prejudicial

3    effect of the photographs (from revulsion, redundancy, or otherwise) outweighs the probative

4    value as to cause of death.

5           Finally, the Court grants the motion to file a consolidated reply to the Government's

6    response to the present motion.

7           **B.     Booth's Second Motion in Limine (ECF No. 507)**

8           Booth asks the Court to require the United States to make a preliminary showing that a

9    racketeering enterprise exists, that Booth was involved therein, and to present evidence of a

10   racketeering enterprise at trial before presenting evidence of the substantive violent crimes

11   charged as violent crimes in aid of a racketeering enterprise.

12          Booth invokes the principle that when the admissibility of evidence turns on a

13   preliminary question of fact, a court must find that the fact has been established by a

14   preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  Booth

15   then notes that to be convicted of a violent crime in aid of racketeering, the Government must

16   prove the existence of a racketeering enterprise.  From here, Booth concludes that the United

17   States must make a preliminary showing of the existence of the alleged racketeering enterprise

18   before the United States may admit evidence of a violent crime in aid of racketeering.

19          Booth conflates the admissibility of evidence with the relationship between two

20   interdependent crimes.  If the jury determines that the United States has not proved a particular

21   racketeering enterprise, then it cannot convict anyone of committing a violent crime in aid of that

22   alleged racketeering enterprise.  But this is a matter for jury instructions and closing argument.

23   The fact that proving one crime may require first proving another crime, or one or more elements

24   of another crime, as here, does not mean that evidence of the dependent crime, i.e., the crime

25   having as an element the existence of another crime, is inadmissible until the other crime has

1   been proved.  Booth points to no piece of evidence whose admissibility *under the evidence rules*

2   turns on some disputed question of fact.  *See id.* at 175 ("The inquiry made by a court concerned

3   with these matters is not whether the proponent of the evidence wins or loses his case on the

4   merits, but whether the evidentiary Rules have been satisfied.").  So long as a piece of evidence

5   is relevant to any of the crimes charged and is not otherwise inadmissible, that evidence is not

6   inadmissible as irrelevant simply because some related or even antecedently necessary charge

7   has not yet been proved.  The Court will deny the motion.

8   **IV.     MOTIONS TO DISMISS**

9          **A.     Booth's Motion to Dismiss (ECF No. 505)**

10          Booth asks the Court to dismiss counts one, two, four, five, and eight.  First, he argues

11   that count one for a racketeering conspiracy fails adequately to appraise Booth of the crime for

12   which he is charged as required under the Fifth and Sixth Amendments.  An indictment cannot

13   simply be a recitation of the statute; it may recite the statute, but it must be accompanied by the

14   facts and circumstances of the particular offense charged.  *See Russell v. United States*, 369 U.S.

15   749, 765 (1962).

16          The Court will not dismiss count one for failure to apprise Booth of the charges against

17   him.  Booth argues that the Indictment does not specify the type of acts underlying the alleged

18   conspiracy and simply alleges that he is a member of the Playboy Bloods.  This is just incorrect.

19   Count 1 of the Indictment describes the background of the alleged criminal enterprise, including

20   the types of activities the members engaged in, i.e., drug trafficking, murder, extortion, and

21   robbery.  Each Defendant's role, including Booth's, is particularly described in a section of the

22   Indictment dedicated to that purpose.  Booth is specifically alleged therein to have been involved

23   in murder, drug manufacture, and drug distribution in furtherance of the alleged racketeering

24   conspiracy.  The purposes, means, and methods of the alleged conspiracy are also alleged.  As

25   for predicate offenses, specific state offenses are identified by statute.  The specific underlying

1  crimes are also noted throughout the remainder of the Indictment as separate counts.  Booth's

2  claim that "[The Indictment] alleges nothing more than that Mr. Booth is a 'member' of the

3  Playboy Bloods which the Government purports to be a RICO enterprise and that sometime

4  between 1999 and the date of the indictment, Mr. Booth entered into a conspiratorial agreement

5  with the other nine defendants . . . ." is an unfair characterization of the allegations in the

6  Indictment.

7       Nor is Booth at present risk of being prosecuted twice for the same RICO offense under

8  the Double Jeopardy Clause.  Booth does not allege having ever been prosecuted for a RICO

9  conspiracy, and he is charged with a single RICO conspiracy here.  If Booth is convicted of the

10 present charged RICO conspiracy, he will have an argument under the Double Jeopardy Clause

11 if he is in the future charged with another RICO conspiracy for activity also arising out of his

12 alleged association with the Playboy Bloods during the relevant time frame.  But today the issue

13 is simply unripe and is no basis for dismissing the Indictment.

14      Next, Booth argues that the Indictment fails adequately to allege a pattern of racketeering

15 activity.  Subsection (d) of 18 U.S.C. § 1962 makes it unlawful to conspire to violate any of

16 subsections (a) through (c). *See* 18 U.S.C. § 1962(d).  Subsection (c) makes it unlawful "for any

17 person employed by or associated with any enterprise engaged in, or the activities of which

18 affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

19 conduct of such enterprise's affairs through a pattern of racketeering activity or collection of

20 unlawful debt." 18 U.S.C. § 1962(c).  A "pattern of racketeering activity" is defined as "at least

21 two acts of racketeering activity." 18 U.S.C. § 1961(5).  "[R]acketeering activity" includes any

22 of a long list of federal offenses or "any act or threat involving murder, kidnapping, gambling,

23 arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance

24 or listed chemical (as defined in section 102 of the Controlled Substances Act), which is

25 chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C.

§ 1961(1)(A).  The Indictment sufficiently alleges a pattern of racketeering activity when it alleges two acts of murder under state law.  Count one identifies Nevada's statute against murder, Nev. Rev. Stat. § 200.030, and the specific instances of murder in furtherance of the RICO conspiracy are identified in counts two and five, i.e., the murders of Brian Wilcox and Billy Thomas, respectively.

Next, Booth argues that the Indictment fails adequately to apprise him of a necessary element of a violent crime in aid of racketeering activity under counts two and five.  Booth argues that this crime requires the Indictment to allege "who committed what act, when and where."  The Indictment alleges that Booth and Tillman murdered Brian Wilcox on or about January 20, 2004 in the state of Nevada, and that Booth, Taylor, and Dunlap murdered Billy Thomas on or about November 1, 2004 in the state of Nevada.  These allegations are sufficient to apprise Booth of the crimes with which he is charged.  (Booth then argues that counts four and eight should be dismissed, because they are necessarily dependant on counts two and five, respectively.)  The Court denies the motion.

**B.      Tillman's Motion to Dismiss (ECF No. 554)**

Tillman makes largely the same arguments as Booth does, and in fact mainly refers to Booth's motion.  Tillman also argues that count nine fails to allege a drug conspiracy, but his argument is brief and conclusory.  Contrary to his arguments, count nine does allege who agreed with whom—it alleges that all ten Defendants agreed with one another to engage in the drug conspiracy.  The Indictment need not allege the dates of the agreements.  The Court denies the motion.

**V.      MISCELLANEOUS MOTIONS**

**A.      Motion to Extend Time (ECF No. 527)**

The United States has moved for the Court to extend time to comply with its October 7, 2011 order until November 7, 2011.  The relevant Defendant (Tillman) has field a notice of non-

1    opposition.  The Court grants the motion.

2    **B.    Motion to Strike Surplusage (ECF No. 551)**

3    Tillman has moved to strike surplusage from the Indictment.  *See* Fed. R. Crim. P. 7(d)

4    ("Upon the defendant's motion, the court may strike surplusage from the indictment or

5    information.").  "This rule introduces a means of protecting the defendant against immaterial or

6    irrelevant allegations in an indictment or information, which may, however, be prejudicial."

7    *Id.* advisory committee's note.  "The purpose of Rule 7(d) is to protect a defendant against

8    prejudicial or inflammatory allegations that are neither relevant nor material to the charges."

9    *United States v. Ramirez*, 710 F.2d 535, 544–45 (9th Cir. 1983) (citing *United States v. Poore*,

10   594 F.2d 39, 41 (4th Cir. 1979)).

11   Tillman notes that six of ten Defendants are no longer part of the case, and that one of the

12   remaining four Defendants will be tried separately.  Specifically, Counts 10–15, 22–24, 28–30,

13   and 32 are brought only against Defendants who are no longer in the case, and counts 4–8 and

14   26–27 are brought only against Taylor, Dunlop, and/or Booth, who will not be tried with

15   Tillman.  Tillman has been indicted only on counts 1–3, 9, 16–21, 25, and 31.  Tillman requests

16   that all counts except those for which he has been indicted be stricken as to him and that a new

17   Indictment be renumbered.  Next, Tillman asks the Court to strike the "special findings," as this

18   is no longer a capital case.  Tillman also asks the Court to strike the "general background and

19   structure" and "roles of the defendants" sections of the first count for RICO conspiracy.  He

20   alleges that some of the allegations therein do not directly relate to any of the crimes with which

21   he is charged and include the roles of defendants who will not be tried with him.

22   By moving to strike certain language as surplusage, Tillman waives any objection to the

23   sufficiency of the Indictment with respect to charges originally appearing therein, though he may

24   object if the United States then attempts to convict him on a new crime that no grand jury has

25   passed upon based on the change. *United States v. Wellington*, 754 F.2d 1457, 1461–62 n.1 (9th

1   Cir. 1985) (citing Fed. R. Crim. P. 7(d) advisory committee's note).  At the hearing, the parties

2   agreed the United States would file a proposed superseding information or indictment, and

3   Tillman waived any objection to its sufficiency based on the removal of information he

4   requested be removed.  The Court will therefore deny the present motion without prejudice.

5            **C.      Taylor's Motion to Continue Trial (ECF No. 618)**

6            Taylor asks the Court to continue his trial until at least May 2012.  At the hearing, the

7   parties agreed to move tho two trials to October 1, 2012 and December 3, 2012.  The motion is

8   therefore denied as moot.

9                                   **CONCLUSION**

10           IT IS HEREBY ORDERED that DPS's Motion to Quash Booth's Subpoena (ECF No.

11  203) is GRANTED.

12           IT IS FURTHER ORDERED that LVMPD's Motion to Quash Taylor's Subpoenas (ECF

13  No. 206) is GRANTED in part and DENIED in part.  The motion is granted as to the broad

14  request for any and all witness statements that may have been made to two particular detectives,

15  but is otherwise denied.

16           IT IS FURTHER ORDERED that Tillman's Motion for a Preservation Order (ECF No.

17  430) is DENIED.

18           IT IS FURTHER ORDERED that Dunlap's Motion to Compel Production of Rule 404(b)

19  Evidence and Joinders Thereto (ECF Nos. 531, 537, 538, 547) are GRANTED.  The United

20  States must produce, thirty (30) days before his trial, any Rule 404(b) evidence it intends to use

21  against Dunlap.

22           IT IS FURTHER ORDERED that Dunlap's Motion to Compel the Production of Federal

23  Law Enforcement Witnesses' Personnel Files and Joinders Thereto (ECF Nos. 532, 537, 539,

24  548) are GRANTED in part and DENIED in part.  The United States must review for

25  impeachment material the personnel files of any law enforcement officers it intends to call as

1   witnesses and must turn over any impeachment material it discovers to the defense thirty (30)

2   days before trial, or to the Court forty-five (45) days before trial for *in camera* review if there is

3   doubt as to the impeachment value of particular documents.

4        IT IS FURTHER ORDERED that Booth's Motion in Limine and Joinders Thereto (ECF

5   Nos. 504, 537, 543) are GRANTED in part and DENIED part, as explained, *supra*.

6        IT IS FURTHER ORDERED that the Motion to Consolidate Reply (ECF No. 581) is

7   GRANTED.

8        IT IS FURTHER ORDERED that Booth's Motion in Limine and Joinders Thereto (ECF

9   Nos. 507, 535, 537, 545) are DENIED.

10        IT IS FURTHER ORDERED that Booth's Motion to Dismiss and Joinders Thereto (ECF

11   Nos. 505, 534, 544) are DENIED.

12        IT IS FURTHER ORDERED that Tillman's Motion to Dismiss (ECF No. 554) is

13   DENIED.

14        IT IS FURTHER ORDERED that the Motion to Extend Time (ECF No. 527) is

15   GRANTED.

16        IT IS FURTHER ORDERED that Tillman's Motion to Strike Surplusage from the

17   Indictment and Joinder Thereto (ECF Nos. 551, 553) are DENIED without prejudice.

18   Defendants retain the right to renew the motion as against the superseding information(s) or

19   indictment(s) the United States has agreed to file, which are due by January 15, 2012.

20        IT IS FURTHER ORDERED that the Motion to Continue Trial (ECF No. 618) is

21   DENIED as moot.

22        IT IS SO ORDERED.

23        DATED: This 8th day of December, 2011.

24

25   _____
       ROBERT C. JONES
      United States District Judge