UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | 2:08-cr-00283-RCJ-RJJ |
| vs. | ) | |
| | ) | |
| MARQUETTE TILLMAN et al., | ) | **ORDER** |
| Defendants. | ) | |

## I.   INTRODUCTION

On October 28, 2008, a federal grand jury returned an Indictment charging Defendants with having engaged in a RICO enterprise, the "Playboy Bloods" street gang. Defendants Jacorey Taylor and Marquette Tillman (collectively, "Defendants") have also been charged with committing a violent crime, murder, in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(1) and (a)(2). Defendants await trial. The Attorney General has declined to pursue the death penalty against them. The other eight Defendants have pled guilty to various charges, and any remaining charges against them have been dismissed.

The Court previously severed Tillman's trial because of a potential problem with trying him together with former co-defendant Steven Booth under *Bruton v. United States*, 391 U.S. 123 (1968). Booth has now pleaded guilty. Because Booth is no longer a defendant, Tillman will presumably be able to cross-examine Booth at trial should the Government introduce

Booth's alleged confession implicating Tillman, thus avoiding any confrontation problem under *Bruton*. Accordingly, the Government has filed a Motion to Rejoin Defendants for Trial (ECF No. 768). Also, Tillman has filed a Motion for Subpoena (ECF No. 774) under seal, a Motion for Production of Evidence for Expert Examination (ECF No. 775), and a Motion to Vacate Protective Order (ECF No. 779), to which Booth has filed a Motion to Extend Time to Respond (ECF No. 785) under seal. Finally, Tillman's attorney has filed a Motion Requesting Telephonic Appearance (ECF No. 784) with respect to the January 11, 2013 hearing on these motions.

## II.   ANALYSIS

### A.   Motion to Rejoin

The Government notes that because Booth has no Fifth Amendment right to refuse to testify concerning crimes to which he has already pled guilty, Tillman's Sixth Amendment right will not be violated by the introduction at trial of evidence of Booth's confession, because Tillman will be able to demand cross-examination of Booth. The Government therefore asks the Court to rejoin Tillman and Taylor for trial. Taylor has consented to rejoinder, but Tillman opposes it.

Tillman responds that there are additional reasons for his trial to remain severed from Taylor's. Tillman argues that the Government may introduce statements against Tillman implicating him in gang activity that Tillman will not be able to cross-examine. However, Tillman does not argue how severance from Taylor will cure these unspecified problems. The Court can address Sixth Amendment issues at trial upon objection. Tillman also suspects that the Government may attempt to introduce the statements of both Tillman and Taylor to prove a RICO enterprise. Tillman argues that Defendants will not be able to cross-examine one another regarding statements they have made that tend to incriminate the other. *See Crawford v. Washington*, 541 U.S. 36, 64 (2004). But this problem will remain regardless of severance. Even if Tillman remains severed from Booth, Tillman will not be able to cross-examine Booth so

long as Booth retains a Fifth Amendment right to refuse to testify, i.e., unless and until he pleads guilty to related charges.

A *Bruton* problem is cured by severance. The introduction of an out-of-court declaration by a defendant-declarant that "he and I agreed to commit a murder" clearly implicates the co-defendant's confrontation rights. If tried together, the co-defendant will not be able to cross-examine the defendant-declarant because of the latter's Fifth Amendment rights, hence the *Bruton* Sixth Amendment problem. Severance cures the problem, because the Government can then introduce the evidence of the admission of conspiracy against the defendant-declarant in his own trial without introducing it in his co-defendant's trial. The *Bruton* issue results from a unique juxtaposition of the Sixth Amendment and the conspiracy hearsay exception.

By contrast, a garden-variety *Crawford* problem is not cured by severance. If a defendant wishes to testify against a co-defendant, or if the Government wishes to introduce a defendant's out-of-court statement against a co-defendant under a hearsay exception, the ability of the co-defendant to cross-examine the defendant turns purely upon the defendant's Fifth Amendment rights, which rights are unaffected by joinder or severance. The Court will prevent any Sixth Amendment violations at trial, but so long as the Government wishes to try Defendants together and is willing to accept any Sixth Amendment limitations that will entail, judicial efficiency counsels in favor of a joint trial.

Next, Tillman argues that severance is required under *United States v. Hernandez*, 952 F.2d 1110, 1115 (9th Cir. 1991), because Tillman wishes to call Taylor as a witness and he expects Taylor's testimony to be exculpatory in some respects. "When the reason for severance is the need for a codefendant's testimony, defendant [sic] must show [1] that he would call the codefendant at a severed trial, [2] that the codefendant would in fact testify, and [3] that the testimony would be favorable to the moving party." *Id.* at 1115 (quoting *United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986)) (alterations in original). Tillman has provided no evidence,

such as an affidavit from Taylor, that Taylor's testimony in a severed trial would be favorable to Tillman. And it can be expected that his testimony on cross-examination may be extremely unfavorable. There is no evidence that Taylor would consent to testify at all in a severed trial, and because he still faces charges in this case, he could reasonably be expected to invoke his Fifth Amendment privilege not to testify as to many questions on cross-examination, potentially requiring the striking of his testimony on direct examination.

Next, Tillman argues that he will have to prepare to litigate additional enterprise acts—in which he was not personally involved because they occurred while he was incarcerated—that he previously did not expect would be introduced at his severed trial, but only at Taylor's trial. But the Court has already ruled that such acts would be admissible as against Tillman regardless of whether he was incarcerated when they occurred, because evidence of acts proving the existence of a RICO enterprise is admissible against any member of the enterprise to prove the enterprise itself, regardless of whether that particular member was involved in any particular act. Joinder and severance are immaterial in this regard. Counsel has always been liable to prepare to litigate any enterprise act, even in a severed trial.

Next, Tillman argues that he and Taylor have antagonistic defenses to certain casino robberies. Specifically, Tillman notes that non-party Jessie Cooper was arrested at the scene of one of the casino robberies, identified one of his cohorts as Taylor, and denied Tillman's involvement. Tillman expects to present Cooper's exculpatory testimony as to the casino robberies. This is not a matter of mutually-exclusive defenses where two co-defendants each accuse the other of sole liability for a single act. Nor is this a case where it is expected that Tillman and Taylor will each accuse the other of sole liability for an uncharged enterprise act (one of the casino robberies). Tillman may call Cooper to show that Tillman was not involved in the alleged enterprise act, and if Cooper implicates Taylor either on direct examination by Tillman or on cross-examination by the Government, Taylor will be able to cross-examine

Cooper. This is not a case of antagonistic or mutually-exclusive defenses, but a case of a witness whose testimony will be favorable to one defendant and harmful to another. Without more, that circumstance poses no constitutional problem. Tillman's argument that Cooper's testimony will require the "elicit[ation of] an admission by Mr. Taylor" as to Taylor's culpability in the casino robbery does not follow. Cooper's testimony will not require Taylor to testify. Taylor's right is to cross-examine Cooper's testimony against him, which right will be preserved so long as Cooper responds to cross-examination.

Finally, Tillman argues that rejoinder will require the delay of trial. Tillman's trial was expected to last 2-4 weeks, and Taylor's trial was expected to last six. With the cases joined, Tillman expects the trial to last the full six weeks or more. Tillman's counsel is unavailable after May 25, 2013, which is the middle of the sixth week, as the trial is currently scheduled. Counsel will not be available for a long trial again until September 2013.

### B. Ex Parte Motion for Subpoena

Tillman asks the Court ex parte to issue a subpoena duces tecum to the Las Vegas Metropolitan Police Department ("LVMPD") to produce the following: (1) all fingerprint evidence obtained from the Cadillac Eldorado involved in Event Nos. 040114-3510 and 040115-0012 and related notes and reports; (2) fingerprint records for Steven Booth, Demichael Burks, Kenneth Jay Counts, Antoine Lavell Fowler, Reginald Jameel Gordon, Carlin Delon Kiper, Kijani Owens, Brian Tatum, and Leland Tatum; and (3) standard operating procedures used by the LVMPD print lab. Without ruling on relevance or admissibility, the Court grants the motion for the sake of efficiency at trial.

### C. Motion for Production of Evidence for Expert Examination

Tillman asks the Court to compel the Government to produce: (1) all firearms evidence associate with the Wilcox homicide, all fingerprints associated with the vehicle suspected of being involved in the attempted murder on January 14, 2004 and those of unspecified persons

suspected by the defense, as well as related notes and AFIS reports; and (3) the cell phone taken from Tillman upon his arrest for the security guard homicide.

The Government responds that it has offered the requested firearm evidence subject only to Tillman's waiver of any argument concerning breaks in the chain of custody of the evidence while it is in Tillman's counsel's or expert's possession. The Government also notes that Tillman's expert has not responded to its attempts to arrange a transfer of evidence.

The Government also responds that Tillman's prints were not found inside or on the automobile connected to the 2004 attempted murder incident, that Tillman knows this and already has most of the requested fingerprint evidence, that any remaining evidence has been long available to him but he has failed to retrieve it, and that Tillman pled guilty to attempted homicide concerning the 2004 incident in state court and therefore cannot attempt to relitigate the issue of his involvement in that attempted murder, thus rendering the evidence irrelevant in any case.

The Government also responds that it has provided counsel with the name of the computer program and type of procedure the FBI intends to use to test the cell phone at issue so that counsel can review the procedure before the test is performed, and that the Government is still waiting for counsel's expert to respond.

### D.  Motion to Vacate Protective Order

Tillman asks the Court to vacate the magistrate judge's July 30, 2009 stipulated Protective Order (ECF No. 187) (the "Order"). The Order prevents the dissemination of co-defendants' statements or summaries thereof. Tillman argues that the Order's purpose was to expedite the death penalty authorization procedure, but that purpose has now become moot. However, the primary purpose of the Order was to protect Defendants from one another. That is, if one Defendant were to find out that another had implicated him, and would testify to having done so at trial, the Defendant making the statement may be in physical jeopardy or at least in

jeopardy of having his testimony altered due to threats. That concern has clearly not become moot, notwithstanding Tillman's claims that the existence of such statements is generally known to Defendants because of reference to relevant case law. The Court will therefore not vacate the Order unless and until, as the Order itself states, the Government agrees.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Rejoin Defendants for Trial (ECF No. 768) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Subpoena (ECF No. 774) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Production of Evidence for Expert Examination (ECF No. 775) is DENIED.

IT IS FURTHER ORDERED that the Motion to Vacate Protective Order (ECF No. 779) is DENIED.

IT IS FURTHER ORDERED that the Motion to Extend Time to Respond (ECF No. 785) and Motion Requesting Telephonic Appearance (ECF No. 784) are GRANTED.

IT IS SO ORDERED.

DATED: This 9th day of January, 2013.

_____
ROBERT C. JONES
United States District Judge