# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WARD, *et al.*,

    Defendants.

Case No. 2:08-CR-00283-KJD-PAL

**ORDER**

    Before the Court is Defendant Markette Tillman's ("Defendant") Motion to Dismiss for Violations of Defendant's Speedy Trial Rights (#977). The Government responded (#979) and Defendant replied (#981). Defendant also filed an errata to his reply (#985).

I. Background

    Defendant was indicted in late October, 2008 (#1). As all parties freely (and frequently) admit, this is a complex case. Defendant stands indicted on 19 counts including Conspiracy to Engage in Racketeer Influenced Corrupt Organization, Violent Crime in Aid of Racketeering, Use of Firearm During a Crime of Violence, Conspiracy to Engage in Drug Trafficking, and Possession with Intent to Distribute Controlled Substance (#652). A review of the docket in this case reveals that Defendant stipulated or moved to continue the date of trial on at least seven (7) prior occasions, not including oral motions for a continuance made during hearings (##112, 182, 204, 503, 640, 951, 963). It must also be noted that these motions both immediately preceded and continued after Defendant's first motion to dismiss for violation of speedy trial rights (#956). Defendant further moved or stipulated to at least thirteen other extensions of time for various pretrial matters (##502,

587, 596, 635, 637, 643, 646, 685, 691, 696, 698, 710, 731). Defendant has also filed more than 35 substantive pre-trial motions in this matter. It should also be noted that according to Defendant, "the first two years of this case" were spent "engaged in an intensive death penalty mitigation investigation." (#977 at 3 ll. 9-11).

Near the end of February, 2013, former Chief Judge Robert C. Jones disappointed Defendant's long-time attorney John R. Grele for various unethical practices including: extorting the court (#810 at 55), attempting to stage a § 2255 challenge (#810 at 55), and delay (#810 at 58). Mr. Grele has appealed these actions to the Ninth Circuit (#824), however no judgment has issued. It is undisputed that this disappointment forced Defendant to choose between proceeding to trial with likely under-prepared counsel and seeking another continuance.

Defendant began asserting his right to a speedy trial on February 27, 2013. When faced with the disappointement of Mr. Grele and the appointment of a new attorney, Defendant asked that Mr. Grele be kept on; "I don't want to have to sit in this detention center for another year and a half." (#801 at 48). Defendant much more strongly asserted this right in June of 2013. "I'm ready to go to trial. I don't even want to wait until November. I was ready to go in April. I'm ready to go in September. I don't want to waive my speedy trial right. I'm ready to go to trial." (#932 at 20-21). The Court also notes that the present motion is Defendant's second motion to dismiss based on speedy trial rights. (##956, 977).

Lastly, the Court acknowledges the death of potential witness Amelia McCurdy. Both sides allege that their case has been harmed as a result of her death (#979 at 13 ll. 21-22; #981 at 9 ll.3-4).

II. Analysis

    A. Legal Standard

The Court is required to use a "balancing test," weighing the conduct of both the prosecution and the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). As noted by the Supreme Court, such an approach compels courts to adjudicate speedy trial issues "on an ad hoc basis" centered on four

factors. Id. at 530. These factors are 1) length of delay, 2) reasons for the delay, 3) defendant's assertion of his right, and 4) prejudice to the defendant. Id. at 530.

Length of delay is a "triggering mechanism", but is a soft standard as "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Id. at 530. As for the reasons for the delay, deliberate delays to hamper the defense are weighted heavily against the government, while "neutral" reasons such as negligence or overcrowded courts are of less weight but count against the government. Id. at 531. Valid reasons "justify appropriate delay." Id. at 531. As for a defendant's assertion of his speedy trial right, it is "entitled to strong evidentiary weight [but] . . . . failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. at 531-32. Prejudice is assessed in light of a defendant's interests in 1) preventing oppressive pretrial incarceration, 2) minimizing anxiety and concern of the accused, and 3) limiting the possibility that the defense will be impaired. Id. at 532. Of these three, the last is the most serious. Id. at 532. However, claims of prejudice must be accompanied by non-speculative proof. United States v. Corona-Verbera, 509 F.3d 1105, 1113 (9th Cir. 2007).

Lastly, the Supreme Court has emphasized the difficult and holistic nature of the task before the Court:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

Barker, 407 U.S. at 533.

B. Application

i. Length of Delay

It is undeniable that the nearly five and one-half years since Defendant's indictment is a lengthy and unusual delay. Accordingly, the Court finds that this "trigger" has been tripped, and the

Court will engage in a full analysis to determine whether Defendant's speedy trial rights have been violated such that his motion to dismiss on that ground should be granted. However, the Court notes that this is a complex case involving numerous charges and at times numerous defendants. Thus, while the length of delay is sufficient to trigger the analysis below, the Court finds that this delay is considerably more tolerable than it would be for a simple crime.

<u>ii. Reasons for the Delay</u>

Several reasons exist for the delay at issue here.

1. As just noted above, this is a complex case dealing with numerous counts and sometimes numerous defendants. This is a valid reason justifying some delay.

2. Defendant engaged in a substantial pre-trial motion practice, filing more than 35 substantive motions during this period. This is a valid reason justifying some delay.

3. The first two years of this case were spent in "intensive death penalty mitigation investigation." (#977 at 3 ll. 9-11). This is a valid reason justifying some delay.

4. Defendant moved or stipulated to motions to continue the trial on at least seven occasions, not including oral motions made at hearings (##1112, 182, 204, 503, 640, 951, 963). It must be noted that these motions both immediately precede *and follow* motions to dismiss for violation of Defendant's speedy trial rights. Defendant cannot ask the Court to delay his trial, and then use that delay to support dismissing his case for violation of his speedy trial rights. Accordingly, these motions constitute a valid reason justifying some delay.

5. Defendant moved or stipulated to at least thirteen other extensions of time for various pretrial matters (##502, 587, 596, 635, 637, 643, 646, 685, 691, 696, 698, 710, 731).

6. Former Chief Judge Robert C. Jones disappointed Defendant's long-time attorney John R. Grele for various unethical practices including: extorting the court (#810 at 55), attempting to stage a § 2255 challenge (#810 at 55), and delay (#810 at 58). New counsel was appointed, but substantial time was–and likely is–required to adequately familiarize themselves with the case and prepare for trial. Judge Jones was acting in his best judgment to protect Defendant's rights and to preserve the

dignity of the Court. Thus, even if the Ninth Circuit rules in favor of Mr. Grele, the delay in Defendant's trial was for a valid reason and justifies the ensuing delay.[1] Further, at the hearing where Mr. Grele was disappointed on February 28, 2013, the Court noted that Mr. Grele was seeking "further budget requests for "investigators and for a second attorney." (#810 at 5 ll. 22-24). Thus, it appears that even had Mr. Grele been kept on the case, he would not have been prepared to go to trial as scheduled.[2]

The Court finds that a host of valid reasons for delay justify the delay in this case.

### iii. Defendant's Assertion of His Right

Defendant began asserting his right to a speedy trial on February 27, 2013. When faced with the disappointement of Mr. Grele and the appointment of a new attorney, Defendant asked that Mr. Grele be kept on; "I don't want to have to sit in this detention center for another year and a half." (#801 at 48). Defendant much more strongly asserted this right in June of 2013. "I'm ready to go to trial. I don't even want to wait until November. I was ready to go in April. I'm ready to go in September. I don't want to waive my speedy trial right. I'm ready to go to trial." (#932 at 20-21). The

---

[1] Defendant asserts a theme of "forced" continuations. Beyond Judge Jones' disappointment of Mr. Grele, Defendant alleges that he was forced to seek a continuance when the Court rejoined his trial with that of other defendants over his objection, as he "would need additional time to prepare to defend against the added enterprise acts . . . ." (#981 at 4 ll. 7-9). However, the court clarified in its order that "[j]oinder and severance are immaterial in this regard. Counsel has always been liable to prepare to litigate any enterprise act, even in a severed trial." (#791 at 4 ll. 13-15). Accordingly Defendant's argument on this point fails. The Court will address the continuance of Defendant's trial from May 6, 2014 to July 7, 2014 at the upcoming hearing on that issue (#983). At bottom, in each of Defendant's "forced continuance" assertions, Defendant either sought the continuance or stipulated to it. Further, in all cases, the action supposedly "forcing" the continuance was for a valid reason and justifies some delay.

[2] Defendant further argues that Simmons v. United States stands for the proposition that a defendant cannot permissibly be forced to choose between his constitutional right to effective assistance of counsel and his speedy trial rights. 390 U.S. 377, (1968). However, the Court in Simmons explicitly limited their holding to "these circumstances." Id. at 394. Those circumstances are that defendants should not be caught between the standing requirements of Fourth Amendment claims and the self-incrimination protections of the Fifth Amendment. Id. at 392-394. However, this dilemma was resolved by making testimony in support of a motion to suppress evidence on Fourth Amendment grounds inadmissible at trial on the issue of guilt (unless the defendant makes not objection). Id. at 394. This case is inapposite here for two reasons. First, the conflict between effective assistance of counsel and speedy trial rights are not the circumstances circumscribed by Simmons. Second, there is no intermediate remedy to relieve the tension between the rights asserted here. Defendant's extreme remedy of dismissing the case entirely on this ground is unsupported in the law, common sense, or justice.

Court also notes that the present motion is Defendant's second motion to dismiss based on speedy trial rights. (##956, 977).

Defendant has not met his admittedly difficult burden of proving violation of his speedy trial rights prior to last year, 2013, in part because he had previously failed to assert these rights. Further, given that the delay since that time has been sought by Defendant as necessary for his new counsel to prepare for trial, while the Court finds that the right has clearly been asserted, its evidentiary weight is overcome by the reasons for the delay as discussed above.

### iv. Prejudice to the Defendant

The Court acknowledges that Defendant has been incarcerated since he was detained pending trial in November of 2008 (#977 at 14 ll. 23-25). However, it is at best unclear that any entity other than Defendant is responsible for the increased "oppressiveness" of his numerous stints in twenty-four and twenty-one hour lockdown (#977 at 14-15). Defendant further asserts that this has hampered his ability to prepare his defense. However, Defendant fails to offer any particulars whatever to this claim.

Defendant's most substantive claim, and the one the Court takes most seriously, is that his defense has been compromised by the loss of McCurdy. While both the Government and Defendant recount conflicting testimony given by McCurdy to third parties, neither (particularly in light of the conflicting testimony) offers non-speculative proof of prejudice. Neither party is able to claim with any certainty what McCurdy would or would not have testified to. Thus, any prejudice to Defendant remains speculative.

### v. Seriousness of the Crimes

While this circumstance is not enumerated in the standard cited above, the Court is to engage in this "difficult and sensitive balancing process" considering "other circumstances as may be relevant." Barker, 407 U.S. at 533. Here, the crimes charged are not the result of a momentary lapse of judgment. Nor are they limited to a single bad act. Rather, the charges suggest the ongoing management of a life and organization revolving around drugs and violence. Such activities pose a

serious threat to the public welfare, and warrant careful scrutiny. While this additional consideration is unnecessary for the Court to reach its conclusion, it weighs against the extreme remedy of dismissing the charges.

III. Conclusion

      The Court has carried out this analysis with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution. However, after careful consideration of all of the circumstances of this case, including the four enumerated factors, the Court finds that dismissal for violation of Defendant's speedy trial rights is unwarranted. However, the Court also expresses its concern regarding the elapsed time in this case. Accordingly, the Court urges all parties to take all reasonable steps to ensure that further delay is avoided. Defendant's Motion to Dismiss for Violations of Defendant's Speedy Trial Rights (#977) is **HEREBY DENIED**.

      DATED this 28th day of March 2014.

_____
Kent J. Dawson
United States District Judge